COMMONWEALTH *vs.* MICHAEL J. LAFAYETTE.

No. 95-P-57.

Berkshire. November 15, 1995. - June 7, 1996.

Present: DREBEN, GILLERMAN, & FLANNERY, JJ.

*Breaking and Entering. Joint Enterprise. Evidence,* Joint enterprise. *Practice, Criminal,* Instructions to jury, Assistance of counsel.

At the trial of indictments for breaking and entering in the nighttime with intent to commit a felony, there was sufficient evidence that the defendant was present at the scene to warrant the defendant's conviction on a joint venture theory [537-539] and the evidence of withdrawal from the joint venture did not require the judge to allow the defendant's motion for a required finding of not guilty at the close of the defendant's case [539]; further, there was no reversible error in the judge's instructions on joint venture [539-541].

In circumstances in which the record of a criminal trial did not conclusively establish whether the judge gave an instruction on withdrawal from a joint venture or whether defense counsel had objected to the omission, no substantial risk of a miscarriage of justice was shown, nor ineffective assistance of counsel, where, in light of the evidence, it was unlikely the jury would have found that the defendant had withdrawn from the enterprise. [541-542]

COMPLAINT received and sworn to in the Northern Berkshire Division of the District Court Department on October 26, 1992.

On appeal to the jury session of the Pittsfield Division, the case was tried before *James P. Dohoney, J.*

The case was submitted on briefs.

*Allan K. Cook* for the defendant.

*Gerard D. Downing,* District Attorney, & *Elizabeth D. Gross,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. Convicted of breaking and entering in the nighttime with intent to commit a felony, the defendant challenges the denial of his motion for a required finding of not

guilty. He claims that he was not present at the scene of the crime and that he had, in any event, withdrawn from any joint venture at the time of the crime's commission. The defendant also asserts that the judge's instructions were incorrect and that his counsel was ineffective. We conclude that there was a sufficient showing of the defendant's presence for him to be liable as a joint venturer and that his other claims do not present reversible error. Accordingly, we affirm his conviction.

Unfortunately, cassettes of the proceedings after the close of the Commonwealth's case are missing. Both the Commonwealth and the defendant submitted proposed statements of the evidence to the trial judge. After a hearing, the judge filed a statement of the evidence beginning with the defendant's case. Our recitation of the facts, viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), is taken from the transcript of the first day of trial. The remaining facts are supplied by the judge's statement of the evidence.

On October 22, 1992, a thirteen year old student at a middle school in North Adams and a fellow student discussed breaking into the D & M Outpost, a hunting store in that town. The next day they went into the store several times to see where the guns and bullets were located and whether there were alarms on the doors, but they had no specific plan to accomplish their mission. The defendant also, according to the owner, was in the store on October 23, 1992.

That evening, the boys sought out the defendant, an adult. Not finding him at home, they looked for him downtown and saw his "bike"[1] and the "bike" of one of his friends (Brian) outside a bar. They motioned the defendant outside and told him of their intent to steal guns from the D & M Outpost. The defendant proposed a plan: the "best bet would be to break through the window with something (inaudible) and then go back (inaudible)."[2] He accompanied the boys to the back entrance of the D & M Outpost, found a rock, and gave it to one of the youngsters. By agreement, the defendant went to a nearby parking lot to signal the boys to throw the rock

[1]It is not clear whether the "bike" was a motorcycle or a bicycle.

[2]The jury could infer that the defendant's plan was to break the door to abort the alarm system and then to go back later. The owner testified that the broken glass prevented him from resetting the alarm system.

when there were no cars in sight. He gave the signal, the rock was thrown through the back glass door, and the three retreated to a prearranged place. The defendant and his friend Brian put the boys on their "bikes" and gave them a ride to a vantage point from which they could view the D & M Outpost and determine whether the police had arrived. After seeing that the police were at the store, the four proceeded to the defendant's apartment. During their discussions of the plan, the defendant told the boys that he did not think "it was a good idea to go back" but, he added, " 'If you get the guns, then I will pay you for them, a couple of them, and if you get caught the least [*sic*] you'll get is some probation, maybe a couple of weeks in jail or lock up.' "

The initial break took place about 8:30 P.M. A little after midnight, the boys, but not the defendant, went back to the store and removed a piece of plywood that the store's owner had arranged to have put over the broken glass. One boy remained outside as a lookout and one entered the store. Shortly thereafter, the police arrived and arrested the two juveniles. They informed the police that the defendant also was involved.

When questioned by the police, the defendant first asserted that he had been home all night with his friend, Brian, that he did not know the boys, and did not know where the D & M Outpost was located. Later, he admitted that he knew who the boys were and that about 8:30 P.M. he had been in the area of the D & M and had seen a police car in the parking lot in the rear.

The defendant called one of the boys as a witness.[3] He testified that "he had gone to the defendant's house on the night of the break and that the defendant had threatened [him] with a knife to break into the store. [He] also corroborated [the other boy's] testimony that [the defendant] had provided . . . the stone which was thrown through the store's glass door and that the defendant was across the street when the rock was thrown." He also testified that the defendant told him that it "wasn't a good idea" to return to the D & M Outpost to steal guns and that the defendant did not encourage him to break into the D & M store after the first break.

---

[3]The other had been a Commonwealth witness.

1. *Element of presence.* "To sustain a conviction for joint venture, there must be evidence from which a jury could conclude that the defendant was present at the scene of the crime, with knowledge that another intends to commit a crime, and by agreement is willing and available to help the other if necessary. The prosecution must also show that the defendant shared with the principal the mental state required for the crime." *Commonwealth* v. *Clarke*, 418 Mass. 207, 214 (1994). *Commonwealth* v. *Sim*, 39 Mass. App. Ct. 212, 215 (1995).

The defendant claims that he was not present at the scene and also that he had withdrawn from any joint enterprise prior to the commission of the crime. Each of these circumstances, he argues, entitled him to the allowance of his motion for a required finding of not guilty, filed at the conclusion of the Commonwealth's case and again at the close of all the evidence. We conclude otherwise. There was evidence that the defendant (1) devised the plan for the theft, including the elimination of the alarm system, see note 2, *supra*; (2) provided the rock for the break to the building — indeed, the rock that was found within the store was identified as the rock given to one of the boys; (3) actively participated as a lookout; (4) later offered to purchase any guns the boys might obtain from the store; and (5) made inconsistent statements indicating a consciousness of guilt.

True, there was no evidence that he was present at the actual entry which was the culmination of the on-going criminal venture. However, while the crime of breaking and entering with intent to commit a felony requires an entry, see *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984), there is no need for a defendant to be present at the scene of a crime throughout its occurrence. "Our courts have been expansive in their treatment of the presence requirement with respect to activities of an alleged joint venturer which reasonably might be viewed as undertaken with the intention of facilitating escape by the principal felon. See *Commonwealth* v. *Mahoney*, 405 Mass. 326, 329 (1989)." *Commonwealth* v. *Sim*, 39 Mass. App. Ct. at 217. In *Sim*, we upheld a conviction of a joint venturer who had left the scene before the victim was murdered and did not return until five minutes after the po-

lice had arrived to investigate the completed crime. *Id.* at 215-218. In determining that there was sufficient evidence of "presence," we noted that since the defendant had planned the robbery, had led the robbers to the victims, and had expected to share in the proceeds of the robbery, it was reasonable to infer that the defendant had agreed to stand by to render aid. It was also reasonable to infer that the defendant, when he returned, did not know that the robbers had left the scene and thus thought that he still might be of assistance. *Id.* at 217-218.

Here, the defendant devised the scheme to implement the theft. The jury could reasonably infer that at the time of the 8:30 P.M. breaking there was an intent shared by the defendant to make a subsequent entry. Indeed, the plan was to knock out the alarm system so that a later entry could safely be made.

It has long been established that a breaking and entering need not be simultaneous, but can be separate in time. Thus in *Rex* v. *Smith*, Russ. & Ry. 417, 418, 168 Eng. Rep. 874, 875 (1820), the court noted that "although a day elapsed between the breaking and the entering, yet the breaking was originally with the intent to enter." Accordingly, the court held the defendant rightly convicted — there was but one single felony. In *Whitsell* v. *State*, 246 Ind. 175, 176-178 (1965), the court, noting that this was "the first time this Court has been confronted with evidence of a 'coffee-break' during the commission of a crime," upheld a burglary conviction because "it might reasonably be inferred that the parties intended to commit the felony even though a 'coffee-break' intervened between the employment of force used to create an opening and the actual entering later on." See also *Commonwealth* v. *Glover*, 111 Mass. 395, 402 (1873) (breaking and entering need not be shown to have occurred on the same night); 2 LaFave & Scott, Substantive Criminal Law § 8.13(b), at 468 (1986) (entry may be separate in time from the breaking); Nolan & Henry, Criminal Law § 4.02, at 302 (2d ed. 1988). Since the defendant was present at a crucial part of the crime with the intent that there be a later entry, we see no reason why he is any the less a joint venturer than

one who is only present in time to assist the departure from the scene.[4]

2. *Withdrawal from the joint venture.* The evidence of withdrawal during the Commonwealth's case consisted of the answer of one of the boys to the question: "Do you remember [the defendant] telling you that he didn't think it was a good idea to go back down there?" His answer was: "Yes. He told us that it wasn't a very good idea but, 'if you did, I would pay you for the guns.' " This statement alone was insufficient to require a finding of not guilty at the close of the Commonwealth's case.

During the defendant's case, according to the judge's statement of evidence, the youngster testifying for the defense stated that the defendant did not encourage him to break into the D & M Outpost after the first break, that between "the time of the first break and the time he returned to the store, he knew that the defendant did not support breaking into the store," and that he and his companion would have broken into the store even if the defendant had not offered to buy any of the guns. While this testimony was more helpful to the defendant, it did not require the allowance of the defendant's motion. Not only was there a question of credibility of the boy's testimony — he also testified that the defendant had earlier threatened him with a knife to break into the store[5] — but also the evidence that the defendant would purchase the guns stolen by the juveniles could readily be found by a jury to indicate continued participation in the criminal enterprise. The juveniles received no clear communication that the defendant had "wholly and effectively detached himself from the criminal enterprise." *Commonwealth* v. *Graves*, 363 Mass. 863, 866-867 (1973). Since the defendant did not, as required, indicate an "intention to do no more," *Commonwealth* v. *Farnkoff*, 16 Mass. App. Ct. 433, 447 (1983), there was no error in denying his motion at the close of the defendant's case.

3. *Instructions as to joint venture.* The defendant submitted requested jury instructions which included presence as an element of joint venture liability. The trial judge, however gave

---

[4]On their return to D & M Outpost, the boys unscrewed the plywood covering the broken glass door. That there was a subsequent additional break did not nullify the original break which eliminated the alarm system.

[5]The testimony may suggest fear of the defendant on the part of the witness.

Instruction 5.05 of the Model Jury Instructions for Use in the District Court (1989) on joint venture. As set out in the margin,[6] the instruction did not expressly include a requirement of presence.[7] Although the defendant preserved his

[6]"Model Jury Instruction 5.05: Joint Venture.

"A person may be found guilty of [offense] even if he did not personally do the act, but instead aided and abetted its commission as part of a joint venture with (another person) (other persons).

"You must determine as an issue of fact in this case whether or not there was a joint venture in which the defendant was engaged. In a joint venture, a person is guilty if he intentionally participates with another in the commission of a crime as something he wishes to bring about, and seeks by his actions to make it succeed.

"In order to prove the defendant guilty of a crime committed by joint venture, the Commonwealth must prove two things beyond a reasonable doubt:

"First: That the defendant aided or assisted in the commission of the crime, or stood by willing and able to help with the crime if it became necessary; and

"Second: That the defendant did so while sharing the intent required to commit the crime.

"Such assistance may be provided in any of several ways. It may take the form of participating with another person in the physical acts which make up the crime. Or it may take the form of obtaining or encouraging the other person to commit the crime. Such assistance may also involve agreeing to stand by the scene of the crime to act as a lookout, or to render aid or assistance in committing the crime or in escaping, if such help becomes necessary.

"An explicit, verbal agreement between the parties is not essential to a joint venture. It is not necessary that joint venturers have a formal advance plan or agreement, as long as they consciously act together before or during the crime to bring it about.

"You are permitted, but not required, to infer that the defendant had the necessary intention if the defendant knew what was going on and participated actively in the crime."

[7]A note accompanying the instruction set forth in note 6 states that three cases, *Commonwealth* v. *Walsh*, 407 Mass. 740 (1990); *Commonwealth* v. *Bianco*, 388 Mass. 358 (1983); and *Commonwealth* v. *Murphy*, 31 Mass. App. Ct. 901 (1991), "stand alone among recent cases in suggesting that presence at the scene of the crime is a separate element of joint venture liability." Subsequent cases have established the requirement of presence for joint venture liability. See, e.g., *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988); *Commonwealth* v. *Daughtry*, 417 Mass. 136, 138-139 (1994); *Commonwealth* v. *Noble*, 417 Mass. 341, 343 n.1 (1994); *Commonwealth* v. *Clarke*, 418 Mass. 207, 214 (1994); *Commonwealth* v. *Chipman*, 418 Mass. 262, 268 (1994); *Commonwealth* v. *Pierce*, 419 Mass. 28, 35 (1994); *Com-*

objection to this omission, in view of our conclusion that presence at the time of the break satisfies the element of presence in the circumstances of this case, and in view of the overwhelming evidence that the defendant was present at that time, the failure of the judge to instruct that presence is an element of the crime was not prejudicial.

4. *Instructions as to withdrawal.* Defense counsel did not request an instruction on withdrawal from a joint venture. The defendant argues that such failure constituted ineffective assistance of counsel. In his statement of the evidence the judge noted that the defendant contended that the court had not given an instruction on withdrawal from a joint venture. The judge wrote, "The Court is unable to say whether such an instruction was given. However, the practice of the Court is to make marginal notes on the topics to be covered in the charge and these notes contain a reference to withdrawal from joint venture."

The Commonwealth contends that the instruction was, in fact, given. A review of the available transcript indicates that withdrawal was considered important by the defense. Counsel's opening referred to the defendant's statement that he "didn't think it was a good idea" to go back there, and his cross-examination of the boy who testified for the Commonwealth laid stress on both that statement and the fact that the defendant did not tell the boys to go back after the original break. It seems most likely that counsel, who throughout the portion of the trial for which we have the transcript assiduously preserved the defendant's rights, would have objected had an instruction on withdrawal not been given. In such circumstances and in view of the judge's marginal notes, we consider it probable that the instruction was given. Even if not, there was here not a substantial risk of a miscarriage of justice nor was the defendant "deprived . . .

*monwealth* v. *Nichypor*, 419 Mass. 209, 212 (1994); *Commonwealth* v. *Lombard*, 419 Mass. 585, 588 (1995); *Commonwealth* v. *Valentin*, 420 Mass. 263, 266 (1995); *Commonwealth* v. *Green*, 420 Mass. 771, 779 (1995); *Commonwealth* v. *Schand*, 420 Mass. 783, 793-794 (1995); *Commonwealth* v. *Williams*, 422 Mass. 111, 121 (1996). For an earlier case not requiring presence, see *Commonwealth* v. *Tyree*, 387 Mass. 191, 218 (1982).

If not already changed, the model instruction should be amended to reflect current law, which distinguishes between liability as a joint venturer (presence required) and liability as an accessory before the fact (presence not required). See *Commonwealth* v. *Green*, 420 Mass. at 779.

of an otherwise available, substantial ground of defence."
*Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). See
*Commonwealth* v. *Curtis,* 417 Mass. 619, 625 n.4 (1994) (stan-
dard for ineffective assistance of counsel "seems not signifi-
cantly different from the standard of a substantial risk of a
miscarriage of justice"). The plan had been conceived by the
defendant and at least partially carried out with his full
participation. Considering the inevitable influence the defen-
dant as an adult had on the two youngsters, one of whom
was only thirteen, it is highly unlikely that the jury, faced
with the evidence of the defendant's offer to pay the boys for
the guns, would have found that the defendant "had wholly
and effectively detached himself from the criminal enterprise"
before the boys' return to the D & M Outpost, *Commonwealth*
v. *Graves,* 363 Mass. at 866, or that he had "announce[d] to
the others an intention to do no more." *Commonwealth* v.
*Farnkoff,* 16 Mass. App. Ct. at 447. In sum, had an instruc-
tion on withdrawal been given, the result in all probability
would have been the same.

*Judgment affirmed.*