Rafael Tulio NOLASCO, Petitioner,

v.

James MATESANZ, Respondent.

No. Civ.A. 98–11706–WGY.

United States District Court,
D. Massachusetts.

April 2, 1999.

Rafael Tulio Nolasco, Norfolk, MA, pro se.

Susanne G. Levsen, Assistant Attorney General, Criminal Bureau, Boston, MA, for James Matesanz, respondent.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

I. INTRODUCTION

Rafael Tulio Nolasco ("Nolasco") petitions this Court for habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, Nolasco contends that the trial judge

improperly admitted evidence from an unlawful search and seizure. Nolasco further contends that there was insufficient evidence to support his conviction in the Massachusetts courts for trafficking in cocaine in violation of Mass.Gen.L. ch. 94C, § 32E(b)(3) (1998).[1]

## II. FACTUAL BACKGROUND

In late 1991, the Narcotics Task Force of the Franklin County District Attorney's Office began to investigate certain suspected drug operations. On April 16, 1992, Massachusetts State Police Trooper Christopher Ray ("Ray") executed a controlled buy of cocaine. This cocaine was purchased at 136 Conway Street in Greenfield, Massachusetts from a man identified as "Victor," a known companion of Nolasco's. The following day, a police surveillance unit revealed that the occupants of 136 Conway Street had moved to 15 Bradford Street in Greenfield.

At trial, John Zieba ("Zieba") testified that in April, 1992, Nolasco asked Zieba to rent an apartment for him at 15 Bradford Street and offered Zieba money and cocaine for his services. Zieba consented to this arrangement and received $50 in cash and an unspecified amount of cocaine. The following day, Nolasco asked Zieba to have the utilities in the apartment turned on. Once again, Nolasco offered Zieba cash and cocaine for his services, and Zieba complied with his request. On April 23, 1992, Zieba informed the police about what had transpired.

On April 23, 1992, Ray, acting in an undercover capacity, purchased 109.9 grams of cocaine from Victor. This purchase took place in the vacant apartment at 136 Conway Street. The money used in this purchase was marked with an ultraviolet detection agent, which stains any human flesh that comes into contact with the money. Upon illumination with an ultraviolet light, the stain becomes visible to the naked eye. In addition, the serial numbers of the marked money were recorded by the police.

On the same day, a police surveillance unit observed 15 Bradford Street for six and a half hours. During this time, the police observed Nolasco often looking out the window, though never leaving the apartment.

After the purchase of the cocaine, police officers, with Victor's arrest warrant in hand, went to execute the warrant at Victor's apparent domicile, 15 Bradford Street. As the police officers banged on the unlocked apartment door to announce their presence, the door swung open and the officers proceeded to enter the apartment. As the officers surveyed the apartment, they found Victor hiding in a bathroom and Nolasco attempting to conceal a large sum of money by throwing the money into a kitchen cabinet. In addition to Nolasco and Victor, three other people were hiding in various places in the apartment. After all the occupants were under the officers' control, an ultraviolet light was flashed on those present. The chemical agent was present on only Nolasco.

Nolasco was convicted, as a joint venturer, of a violation of Mass.Gen.L. ch. 94C, § 32E(b)(3) by a jury in Massachusetts Superior Court. He was subsequently sentenced to a term of imprisonment of ten years to ten years and one day. The Massachusetts Appeals Court upheld this conviction and the Supreme Judicial Court refused any further appellate review. This petition for habeas corpus relief followed.

1. The relevant portions of Mass.Gen.L. ch. 94C, § 32E state:

(b) Any person who traffics in a controlled substance ... by knowingly or intentionally manufacturing, distributing or dispensing or possessing with intent to manufacture, distribute or dispense or by bringing into the commonwealth a net weight of fourteen grams or more ... or any mixture [that] is: (3) One hundred grams or more, but less than two hundred grams, be punished by a term of imprisonment for not less than ten nor more than twenty years....

MassGen.L. ch. 94C, § 32E(b)(3).

## III. DISCUSSION

### A. *Standard of Review*

Under 28 U.S.C. § 2254, a state court conviction may be reviewed by a federal court only for constitutional error. *See* 28 U.S.C. § 2254 (1998). Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

■ In *O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998), the First Circuit set forth a framework for analyzing claims for habeas relief under this statute. The first prong of the two-part analysis requires the federal court to inquire "whether the Supreme Court has prescribed a rule that governs the petitioner's claim." *Id.* at 24. If the Supreme Court has prescribed such a rule, then the federal court must determine "whether the state court's decision is 'contrary to' the governing rule." *Id.* To obtain relief at this stage, the "habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *Id.* at 24–25.

If such a rule has not been prescribed, then the federal court determines "whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an 'unreasonable application' of Supreme Court precedent." *Id.* A decision is to be deemed unreasonable only when it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Id.* at 25. In considering the petition, however, the federal court must recognize that a determination of a factual issue made by a state court shall be presumed correct. *See* 28 U.S.C. § 2254(e)(1) (1998). The habeas petitioner has the burden of rebutting this presumption by clear and convincing evidence. *See id.*

### B. *Fourth Amendment Search and Seizure*

■ Nolasco contends that the marked money seized from 15 Bradford Street was obtained illegally because no valid search warrant existed at the time the police entered the dwelling. In assessing Nolasco's Fourth Amendment claim, this Court is bound by *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), in which the Supreme Court held that "where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* Therefore, if Nolasco had an opportunity to present his Fourth Amendment claim to the relevant state court, this Court is without authority to evaluate the merits of his claim.

Nolasco's motion to suppress the evidence seized at 15 Bradford Street was denied. The motion judge concluded that the police, acting under the arrest warrant for Victor, lawfully entered the apartment and that the money was in plain view of the officers. Thus, the court held the evidence admissible. The Appeals Court upheld this decision, finding no constitutional error. Therefore, since Nolasco was afforded a fair opportunity to present and litigate this claim, this Court is without authority to grant habeas relief on this ground.[2]

**2.** The fact that the Supreme Judicial Court

denied further appellate review of Nolasco's

## C. Sufficiency of Evidence

Nolasco further contends that he is entitled to habeas relief because there is insufficient evidence to support his conviction. Consonant with *O'Brien*, this Court must first determine whether applicable Supreme Court precedent governs.

In adjudicating habeas petitions on the basis of insufficient evidence, the Supreme Court has held that a court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■■■ As this rule is not "contrary to" the decision of the Massachusetts courts, this Court must determine whether the state courts' use of existing law involved an "unreasonable application" of Supreme Court precedent. *See O'Brien*, 145 F.3d at 24. In assessing reasonableness, a federal court must remain cognizant that a state court decision is to be deemed unreasonable only when it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Id.* at 25. This is an exceedingly difficult standard for Nolasco to meet.

■■■ Viewing all the evidence in a light most favorable to the prosecution, there is ample evidence to support a criminal conviction of Nolasco as a joint venturer in the trafficking of cocaine. Perhaps the most compelling evidence to support Nolasco's conviction is his effort to conceal the marked money by throwing it into a kitchen cabinet. *See Commonwealth v. Costa*, 407 Mass. 216, 225, 552 N.E.2d 106 (1990)

(noting that actions that indicate consciousness of guilt, in connection with other evidence, may be enough to prove guilt). In addition, there was affirmative proof of Nolasco's contact with the money when the chemical agent appeared on only Nolasco's hands. Further, a police surveillance unit observed Nolasco frequently looking out a window at 15 Bradford Street, apparently acting as a lookout. These facts, in addition to the testimony of Zieba, would easily allow "[a]ny rational trier of fact" to conclude, beyond a reasonable doubt, that Nolasco knowingly aided in the distribution of cocaine. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *accord* Mass.Gen.L. ch. 93C, § 32E(b)(3).

Moreover, the fact that Nolasco was not present during the transfer of drugs to the officer is of little consequence to this analysis. *See Commonwealth v. Lafayette*, 40 Mass.App.Ct. 534, 537, 665 N.E.2d 1025 (1996) (concluding that there is no need for a defendant to be present at the scene of a crime throughout its occurrence); *cf. Commonwealth v. Carmenatty*, 37 Mass. App.Ct. 908, 910, 638 N.E.2d 496 (1994) (holding that the fact that the defendant did not handle the drugs is not dispositive of his involvement in drug dealing). Because his role as a joint venturer has been firmly established, that he did not handle the drugs directly is of no significance.

## IV. CONCLUSION

For the foregoing reasons, this Court concludes Nolasco had a full and fair opportunity to litigate his Fourth Amendment claims in the courts of Massachusetts, and that sufficient evidence exists to support Nolasco's conviction as a joint venturer in trafficking in cocaine. Therefore,

case is of no consequence to this analysis since Nolasco had a full and fair opportunity to present his Fourth Amendment claims before both the Superior Court and the Appeals Court. *See Bastardo v. Marshall*, No. Civ. A. 93–40099–NMG, 1997 WL 667785, at *2 (D.Mass. Oct.16, 1997) (Gorton, J.) (holding

that the petitioner, who was denied further appellate review by the Supreme Judicial Court, had a full and fair opportunity to litigate his Fourth Amendment claim in the state trial court and Appeals Court and thus *Stone* precluded federal habeas relief).

Nolasco's petition for habeas relief is hereby DENIED.