Following a jury trial in the District Court, the defendant, Shaun T. Jordan, was convicted of assault and battery on a police officer, resisting arrest, and willfully injuring a police dog. On appeal, the defendant claims that (1) the evidence was insufficient to sustain a conviction of willfully injuring a police dog; (2) the judge's erroneous instruction on the elements of willfully injuring a police dog warrants a new trial; (3) the resisting arrest conviction cannot stand because the arrest "had already been effected when the alleged altercation occurred"; and (4) multiple evidentiary errors created a substantial risk of a miscarriage of justice. We affirm.
Background. On February 22, 2016, three police officers from the Leominster Police Department went to a Motel 6 to effectuate an arrest warrant on the defendant. One of the three officers, Officer Randy Thomas, was accompanied by his K-9, a German Shepherd named Justice. Upon arrival, one of the officers spoke with the defendant's wife, Mrs. Jordan, who permitted the officers to enter the motel room.
Before entering the room, Officer Thomas announced three to five times, "Leominster Police K-9, surrender immediately or I will send the dog and he will bite you." The defendant, who was inside the motel room, did not surrender after the announcements. Thus, Officer Thomas and Justice entered the room. Justice first showed interest in one of the beds in the room, but Officer Thomas "saw this door ... to the bathroom creep closed." At this point, Justice "began scratching at the [bathroom] door indicating that there was a possible suspect inside." As Justice scratched at the door, the door was "slightly ajar." While Justice's head was between the door and the door jamb, the door "abruptly shut forward," and struck Justice on the side of the head. Officer Thomas and Justice entered the bathroom and observed the defendant, who was fully clothed, enter the bathtub and attempt to cover himself with the shower curtain. Officer Thomas provided at least two further warnings to the defendant to show his hands. The defendant did not comply, Officer Thomas sent Justice to the defendant, and Justice dragged the defendant out of the bathtub.
The defendant was asked to drop to his knees and place his hands behind his head. Officer Thomas, assisted by one of the other officers, handcuffed the defendant behind his back. Officer Thomas Kochanski then led the defendant outside of the motel room, toward the police cruiser. As the defendant was led out of the motel room, he yelled, "I want my sneakers, I want my sneakers."[2] During the walk to the police cruiser, the defendant "tense[d] up" and pushed into Officer Kochanski. As Officer Kochanski attempted to put the defendant to the hood of the police cruiser, the defendant "was trying to break away ... going back and forth with his shoulders." Officer Thomas heard Officer Kochanski telling the defendant to "stop resisting, stop resisting." The defendant "was trying to wrestle with [Officer Kochanski] and trying to escape." Upon hearing Officer Kochanski scream in pain, Officer Thomas told the defendant, at least two times, to "stop resisting or I'm going to send the dog." The defendant did not comply with the command, and Officer Thomas released Justice, who performed a "spot bite to adhere onto the [defendant's] leg." The defendant stopped resisting and was placed in the police cruiser.[3] Officer Kochanski sustained a sprained thumb as a result of the struggle.
Discussion. 1. Willfully injuring a police dog. The defendant claims that the evidence was insufficient for the jury to convict him of willfully injuring the police dog. In the alternative he argues that the jury instruction on this issue was erroneous and warrants a new trial. The claims are unavailing.
a. Sufficiency. General Laws c. 272, § 77A, provides that "[w]hoever willfully tortures, torments, beats, kicks, strikes, mutilates, injures, disables or otherwise mistreats, a dog or horse owned by a police department or police agency of the commonwealth or any of its political subdivisions or whoever, willfully by any action whatsoever, interferes with the lawful performance of such dog or horse shall be punished ...." Neither the statute nor case law interpreting the statute define "willfully" or "willful." When determining sufficiency of the evidence, we analyze "whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient ... to permit the jury to infer the existence of the essential elements of the crime charged ...." Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), quoting Commonwealth v. Sandler, 368 Mass. 729, 740 (1975).
The defendant relies on the principle of ejusdem generis to posit that, because the statute uses the words "torture," "torment," "beat," "mutilate," and "disable," the words "strike" or "otherwise mistreat," as used in the statute, are intended "to cover serious blows and serious mistreatment, akin to torture and torment." See Commonwealth v. Gallant, 453 Mass. 535, 542 (2009), quoting Powers v. Freetown-Lakeville Regional Sch. Dist. Comm., 392 Mass. 656, 660 (1984) ("The principle of ejusdem generis is a 'rule of construction [that] is employed to ascertain the correct meaning of words by limiting general terms which follow specific ones to matters similar to those specified' ").
Statutory analysis begins with the plain language of the statute, "which we construe 'according to its common and approved usage.' " Commonwealth v. Sudler, 94 Mass. App. Ct. 150, 154 (2018), quoting Commonwealth v. Scott, 464 Mass. 355, 358 (2013). Where, as here, the language is unambiguous, the defendant's claim is unpersuasive. The evidence viewed in the light most favorable to the Commonwealth showed that the defendant slammed the bathroom door on the dog's head or face. He did so after being warned of the dog's presence. Furthermore, Officer Thomas initially saw the door "creep closed," but then, as Justice attempted to enter, the door "abruptly shut forward," and struck Justice on the side of the head. The manner in which the defendant closed the door, combined with all of the other evidence, supported the inference that he acted "willfully" to "strike" Justice within the meaning of G. L. c. 272, § 77A.[4]
The defendant argues that we should construe the statute to apply only to serious blows or mistreatment. As discussed, this contention is not consistent with the plain language of the statute. Moreover, when the Legislature has intended to classify conduct or injury as "serious," it has done so. See, e.g., G. L. c. 265, § 13A (b ) (i) (setting forth enhanced penalty for commission of assault and battery causing "serious bodily injury"). We decline to read words or meaning into the statute in this fashion. See Sterilite Corp. v. Continental Casualty Co., 397 Mass. 837, 839 (1986) (plain and ordinary meaning of statutory language is conclusive as to legislative intent in absence of contrary evidence such as statute's history and purpose). In any event, even accepting the defendant's proffered interpretation of the statute, the evidence here viewed in the light most favorable to the Commonwealth would satisfy a specific requirement that the strike or mistreatment be serious.
b. Jury instruction. At trial, the defendant requested, in writing and orally, a specific instruction on the elements of willfully injuring a police dog. The judge gave the requested instruction. The defendant now claims that the instruction was erroneous and warrants a new trial. We disagree. We review an invited error such as this for a substantial risk of a miscarriage of justice. See Commonwealth v. Leary, 92 Mass. App. Ct. 332, 342 (2017) ("[A]n error in the giving of ... a jury instruction, if occasioned by the defendant's own request, is regarded as an invited error, and is reviewable only to the extent necessary to prevent a substantial risk of a miscarriage of justice"). See also E.B. Cypher, Criminal Practice and Procedure § 34:10 (4th ed. 2014). "We review the evidence and the case as a whole. We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." Leary, supra at 343, quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002).
Here, there was no model jury instruction for the willful injury charge pursuant to G. L. c. 272, § 77A. Accordingly, the judge read the statutory language to the jury and read the jury instruction proposed and sought by the defendant.[5] The statutory language was clear; the portion of the instruction requested by the defendant, however, was incorrect, because it could have allowed the jury to convict the defendant based merely upon a "touching" of the dog "without consent." We note, however, that defense counsel was concerned with the issue of intent, and the requested instruction required the jury to make a finding of intent.[6] See note 4, supra. Viewed in context, the defense made a tactical decision to provide the jury with an instruction that accommodated the defense in this case -- lack of intent. See Leary, 92 Mass. App. Ct. at 343.[7] Viewing the instructions as a whole and the strength of the evidence at trial, the erroneous instruction did not create a substantial risk of a miscarriage of justice.
2. Resisting arrest. The defendant next contends that his arrest had been effected at the time the "alleged altercation" occurred, thereby he could not have been convicted of resisting arrest. We disagree. As the defendant acknowledges, his position is contrary to Commonwealth v. Ocasio, 71 Mass. App. Ct. 304, 310-311 (2008), and Commonwealth v. Katykhin, 59 Mass. App. Ct. 261, 262-264 (2003). General laws c. 268, § 32B, provides that "[a] person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest ... by: (1) using or threatening to use physical force or violence against the police officer or another." An arrest is not effected until the defendant is detained in the police cruiser. See Ocasio, supra at 311 ("process of 'effecting' [defendant's] arrest continued at least through the officers' placement of him in the cruiser"); Katykhin, supra at 262-263 (defendant "seized" when handcuffed, but arrest not "effected" until defendant placed in cruiser). In light of the testimony from various eyewitnesses regarding the defendant's physical altercation and extended struggle with the officer prior to being restrained within the police cruiser, as well as the use of physical force and violence against the officer, the Commonwealth met its burden under the Latimore standard. See Latimore, 378 Mass. at 676-677. See also Ocasio, supra.
3. Evidentiary matters. The defendant contends that the cumulative effect of the admission of prior bad acts evidence created a substantial risk of a miscarriage of justice. We disagree.
"[T]he prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose." Commonwealth v. Corliss, 470 Mass. 443, 450 (2015), quoting Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). We will not disturb the judge's determination whether the probative value of the disputed evidence is outweighed by potential prejudice "absent palpable error." Corliss, supra, quoting Commonwealth v. McGee, 467 Mass. 141, 156 (2014).
The defendant argues that the judge should not have admitted the following evidence. First, the judge allowed the police officers to mention that they were at the motel with a warrant. The warrant issue was thereafter raised throughout trial, including by defense counsel. Second, the prosecution asked the defendant and his wife on cross-examination about their prior interactions with the Leominster police. Third, the judge overruled defense counsel's objections regarding the defendant using the motel room as a "hideout."[8] Fourth, the defendant argues that the prosecutor erred in closing argument by elevating the characterization of the motel room as a hideout to the "theory of the government's case." We need not dwell long on these arguments. The Commonwealth was entitled to reference the warrant to provide context to explain the officers' arrival at and entry into the motel room. The judge's prompt and repeated limiting instructions, reiterated in the final charge, negated any risk of undue prejudice to the defendant. See Commonwealth v. Serrano, 74 Mass. App. Ct. 1, 6 (2009) (judge did not abuse discretion in admitting evidence with clear limiting instruction). Likewise, the references at trial and in closing argument to the motel room as a "hideout" were reasonable inferences drawn from the evidence. The inference was relevant to rebut the defendant's claim that he did not know that there was a warrant for his arrest, particularly in view of Mrs. Jordan's testimony that she rented the motel room, only in her name, for no apparent reason. There was no error.[9]
Judgments affirmed.

During the incident the defendant was wearing socks, but no shoes.

The defendant was transported to the hospital for treatment of a puncture wound on his leg.

We are not persuaded by the defendant's suggestion that if he closed the door in order to avoid being attacked by the dog, this negated a finding that he struck the dog willfully.

After reading the statutory language to the jury, the judge instructed the jury that the Commonwealth must prove beyond a reasonable doubt that: "first, the defendant touched the dog without having any right or excuse for doing so; second, that the defendant intended to touch the dog; third, that the touching was either likely to cause bodily harm to the dog or done without consent; fourth, the dog was owned by the Leominster police; fifth, that the defendant knew the dog was a police dog; and sixth, the dog was utilized in the performance of the police function."

The requested instruction also required proof that striking of the dog was "likely to cause bodily harm" or was "done without consent," which is not required by the statute. The "likely to cause bodily harm" language placed a higher burden on the Commonwealth than that required by the statute. The Commonwealth recognized this higher burden, stating during the charge conference that "[i]t seems like I have to prove a lot more things with the ... proposed jury instruction rather than what I have to prove in the ... statute." Further, we are confident, under the particular facts of this case, that the jury did not convict the defendant on the theory that the defendant merely touched the dog without its consent.

Consistent with the requested instruction, defense counsel's closing argument emphasized the defendant's purported lack of intent.

We review the objected-to admission to determine whether "the conviction is sure that the error did not influence the jury, or had but very slight effect ...." Commonwealth v. Alphas, 430 Mass. 8, 13 n.7 (1999), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

To the extent we do not discuss other arguments made by the defendant, they have not been overlooked. "We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).